FILED

2010 Dec-20  PM 12:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **THERESA MITCHELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:10-cv-1619-AKK** |
| **ALABAMA AGRICULTURAL** | ) | |
| **AND MECHANICAL** | ) | |
| **UNIVERSITY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendants Alabama Agricultural and Mechanical University ("the University") and Dr. Andrew Hugine, Jr.'s ("Dr. Hugine") Motion to Dismiss, (doc. 3), and Defendants the Board of Trustees for Alabama Agricultural and Mechanical University (the "Board") and Dr. L. Shefton Riggins, Robert Avery, Dr. Raymond Burse, Emma J. Melton, James Montgomery, Hon. Martha Lynn Sherrod, Odysseus M. Lanier, Rev. D. Tom Bell, Jr., Norman Hill, and Lucien B. Blankenship's (collectively the "Trustees") Motion to Dismiss, (doc. 7). The motions are fully briefed and ripe for consideration. For the reasons stated below, the court GRANTS, in part, and DENIES, in part, the motions to dismiss.

1

# I. FACTUAL BACKGROUND

The University hired Plaintiff as a secretary in January 1988, a position she retained for twenty years.  Doc. 1 at ¶ 12.  In 2008, Plaintiff became an Instructor in the Department of Management and Marketing in the School of Business.  *Id.* On November 20, 2009, Plaintiff received a letter ("the termination letter") indicating that her "employment was not being renewed in the new fiscal year" and that she would be terminated as of December 31, 2009.  *Id.* at ¶ 13.  Because the Alabama Code defines the fiscal year as "[f]rom October first to September thirtieth, inclusive," ALA. CODE § 16-1-1(5), Plaintiff asserts that Defendants could not terminate her until October 1, 2010.  Doc. 1 at ¶ 14.

Three individuals signed the termination letter: Dr. Hugine, President of the University; Beverly Edmond, Provost and Vice President of Academic Affairs; and Amin Sarkar, Dean of the School of Business.  *Id.* at ¶15.  Hugine is a black male, Edmond is a black female, and Sarkar "is a male and has dark skin."  *Id.* at ¶¶ 16-18.  Larry McDaniel, a black male who chairs the Department of Management and Marketing, also participated in the decision to terminate Plaintiff.  *Id.* at ¶ 19.

Of the three existing non-track Instructors in the Department of Management and Marketing, Defendants terminated two white females, Plaintiff

and Elizabeth Scherff, and retained Dana Harris, a black male. *Id.* at ¶¶ 20-21.

Plaintiff asserts that Harris was not hired until 1993 and "possesses fewer years of

service" than Plaintiff. *Id.* at ¶ 22. After terminating Plaintiff, Defendants also

hired several part-time employees, all of whom are black, to teach Plaintiff's old

classes. *Id.* at ¶ 23. Based upon these facts, Plaintiff asserts that her race, color, or

sex motivated Defendants' decision to terminate her employment. *Id.* at ¶ 24.

Plaintiff also alleges that her termination violated the policies, procedures,

and rules provided in the Revised June 2003 Faculty/Administrative Staff

Handbook (the "Handbook"). *Id.* at ¶¶ 27, 30. In particular, Policy 5.2, which

provides that "the decision whether to reappoint a non-tenured faculty member

when a term of appointment expires may be based on any factor considered

relevant to the total institutional interests, but it must consider the faculty

member's demonstrated professional competence, the potential for future

contribution, and institutional needs and resources," *id.* at ¶ 28 (quoting

Handbook), and Policy 5.5, which sets specific procedures for terminating faculty

employees due either to a bona fide financial emergency or a major elimination of

teaching or research programs. *Id.* at ¶ 29.

As a result, Plaintiff asserts seven counts against Defendants: (1) Title VII

Discrimination; (2) Deprivation of Equal Protection Under 41 U.S.C.A. § 1983;

(3) Discrimination Under 42 U.S.C.A. § 1981; (4) Deprivation of Equal Protection

Under the Alabama Constitution of 1901; (5) Declaratory Judgment; (6) Breach of

Contract; and (7) Petition for Writ of Mandamus or, in the alternative, for Writ of

Certiorari.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to

relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation

marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  *Id*. at 1949 (citing *Bell Atl. Corp.*, 550

U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted.  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all of a plaintiff's factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

Additionally, the Eleventh Circuit has made clear that district courts should no longer apply a heightened pleading standard to actions under § 1983. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). "After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule

5

8(a)(2), including civil rights complaints." *Id.* To the extent that the parties assert

otherwise, they err.

### III. ANALYSIS

Defendants collectively present many of the same arguments in support of

their separate motions to dismiss.[1] Because of these significantly overlapping

arguments, the court addresses the two motions jointly unless otherwise indicated.

Moreover, because Plaintiff's complaint fails to distinguish between Defendants,

the court assumes that each of Plaintiff's claims is against each of the Defendants.[2]

The court addresses the motions to dismiss accordingly.

Plaintiff concedes several of her claims fail as a matter of law, *see* Doc. 26

at 5, 10, 12, 14, 31, and consents to the dismissal of: (1) her Title VII claims

against Dr. Hugine in both his official and individual capacity; (2) her Title VII

claims against the Trustees; (3) her § 1981 and § 1983 claims against the

University; (4) her § 1981 and § 1983 claims against Dr. Hugine in his official

capacity, to the extent she seeks retrospective damages or back pay; and (5) her §

1981 and § 1983 claims against the Trustees in their official capacity, to the extent

---

[1]In fact, Defendants filed only a single reply brief on behalf of all Defendants.

[2]Alabama Code §§ 16-49-20 *et seq.* created the Board as the sole body corporate for the University. The Board is the sole legal entity for purposes of liability. *See* ALA. CODE § 16-49-22. Thus, the court's reference to the University is really reference to both Defendant Alabama A&M and the Board, its legal embodiment. *See also* doc. 34 at 2 n. 1.

she seeks retrospective damages or back pay. Doc. 26 at 30.  Accordingly, the

court **DISMISSES** the aforementioned claims.

Thus, the remaining claims[3] for the court to address are: (1) the § 1981

claims against Dr. Hugine, in his official and individual capacity, and against the

Trustees in their official capacity; (2) the § 1983 claims against Dr. Hugine, in his

individual capacity and official capacity, and against the Trustees in their official

capacity; and (4) several state law claims against the University, Dr. Hugine, and

the Trustees, including claims for (a) Equal Protection violations; (b) declaratory

judgment; (c) breach of contract; and (d) writ of mandamus or certiorari.  The

court will address Defendants' assertions of immunity after addressing their

12(b)(6) motions disputing the sufficiency of Plaintiff's factual pleading.

## A.    Defendants' Motions Under 12(b)(6) Fail

Defendants assert that Plaintiff fails to sufficiently plead a number of her

claims and move to dismiss many, if not all, of the claims because of the

complaint's alleged "shotgun" nature.  *See* doc. 9 at 36-38 and doc. 34 at 6-8.

However, the court must liberally construe the pleadings of *pro se* litigants.

---

[3]Defendants do not challenge Plaintiff's Title VII claim against the University or her §
1983 claim against Dr. Hugine in his official capacity, to the extent she seeks reinstatement.
Doc. 34 at 4.  Thus, those claims survive, and the court does not address them further.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972).[4]  Additionally, Defendants conceded that Plaintiff alleged sufficient facts to properly plead a Title VII claim against the University.  *See* doc. 34 at 4.  Courts agree that the legal requirements of Title VII claims are analytically the same as those for claims under § 1981 via § 1983.  *See Pears v. Mobile Cnty.*, 645 F. Supp. 2d 1062, 1089 n.39 (S.D. Ala. 2009) (collecting cases).  Thus, as it relates to § 1983, Plaintiff's complaint sufficiently alleges that the University and the officials involved in her termination failed to abide by the school's mandatory policies.  She asserts that the decision makers – the University, the Trustees, and Dr. Hugine – did so in part because of her race or color.

Defendants correctly note, however, that the pleading lacks specificity with respect to the alleged actions taken by the various named officials.  Defendants cite to case law suggesting that, where the pleading does not sufficiently specify which claim applies to which defendant, the appropriate course is to dismiss without prejudice to allow for an amended complaint.  *See, e.g.*, *Cyprian v. Auburn Univ.*, 2010 WL 1904284, at *1 (M.D. Ala. May 10, 2010) (dismissing case under *Twombly-Iqbal* pleading standard "unless [plaintiff] filed an amended

---

[4] The court recognizes, however, that Plaintiff no longer proceeds *pro se*, and that her counsel has had opportunity to ask the court for leave to file an amended complaint.

complaint"); *Knight v. Pugh*, 2010 WL 2487373, at *1 (M.D. Ala. June 17, 2010) (allowing plaintiff to replead § 1983 claims to identify which claim applies to which defendant).  In addition, Defendants assert that because of the dangers of such shotgun pleading, it is, therefore, crucial that the court "undertake the difficult, but essential, task of attempting to narrow and define the issues before trial."  Doc. 9 at 36 (quoting *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997)) (internal citations and quotation marks omitted).

The court declines, however, to grant Defendants the specific relief they seek because, given the court's dismissal of several of Plaintiff's claims, the issues in the case will be sufficiently narrow as a result of this opinion.  Moreover, the court notes also that Plaintiff asserts that she received a termination letter signed by Dr. Hugine.  Doc. 1 at ¶ 15.  The letter purported to terminate her after the fiscal year, yet ended her employment ten months before the fiscal year ended under the Alabama Code.  Plaintiff further asserts that her termination was improperly motivated by her race, color, and gender and identifies a comparator Defendants retained despite having fewer years of service than Plaintiff.

As further evidence of an allegedly improper motive, Plaintiff asserts that Defendants failed to abide by their own guidelines.  Although Plaintiff should include additional detail regarding how Defendants failed to abide by the required

procedures, because she filed the complaint as a *pro se* party, the court finds that she has alleged sufficient factual detail to meet the *Iqbal-Twombly* pleading standard.  At the very least, her claims that Defendants ignored mandatory policies and procedures, in addition to her sufficiently pleaded Title VII claim, afford her the opportunity to replead her complaint with added detail.

Though Plaintiff's Complaint suffers, at times, from a lack of clarity,[5] it provides sufficient factual detail to meet the requirements of *Iqbal* and *Twombly* by presenting facts that, if taken as true, make her claims plausible.[6]  In short, Plaintiff asserts that Defendants fired her in violation of the University's policies, identifies those specific policies, and alleges facts that make it plausible that her race, color, or gender improperly motivated Defendants' decisions.  Therefore, the court **DENIES** Defendants' motions to dismiss the complaint for failure to sufficiently plead the § 1983 and state law claims.

**B.      Plaintiff's Claim Under Section 1981 Merges with § 1983**

Plaintiff asserts claims under § 1981 as well as § 1983 against Dr. Hugine,

---

[5] The court recognizes that Plaintiff proceeded *pro se* when she filed her Complaint.  To the extent her claims survive, Plaintiff may amend her complaint as requested to specifically assert which claims she directs against which defendants.

[6] Plaintiff asserts claims against Dr. Hugine in his individual capacity, yet asserts nothing to indicate that Dr. Hugine acted outside of his official capacity.  Thus, as discussed in detail below, the claims against Dr. Hugine in his individual capacity fail to state a claim.

individually and officially, and the Trustees.  However, a private cause of action against state actors does not exist under § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (applying *Jett*, determining that "§ 1983 constitutes the exclusive remedy against state actors for violations of the rights contained in § 1981").  The proper means to bring an action for the violation of rights guaranteed in § 1981 is through suit under § 1983.  *See Jett* at 733; *see also Butts*, 222 F.3d at 894 ("[T]he Supreme Court refused to find in § 1981 an implied cause of action against state actors because Congress had clearly established § 1983 as the remedial scheme against state actors.").  When, as here, a plaintiff brings claims under both § 1981 and § 1983, a court should merge the § 1981 claim into the § 1983 claim, which provides the appropriate remedy.  *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1273, n.3 (11th Cir. 2008) (noting that the district court merged the § 1981 and § 1983 claims because § 1983 provides the "exclusive remedy against state actors for violations of the rights contained in § 1981").  Accordingly, the court **MERGES** Plaintiff's claims under § 1981with her § 1983 claims and addresses them as if only the § 1983 claims remain.

## C.   Plaintiff's Claims Under § 1983

Defendants move to dismiss Plaintiff's § 1983 claims against Dr. Hugine in

11

his individual and official capacity and against the Trustees in their official capacity. Pursuant to Alabama state law, Dr. Hugine and the Trustees are state employees. States are immune from private suit under the Eleventh Amendment. *See* U.S. CONST. amend. XI; *see also Edelman v. Jordan*, 415 U.S. 659, 663 (1974). Such immunity can only be waived by the State or abrogated by Congress. *See generally Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44 (1996). Neither party asserts that Alabama has waived its immunity nor do the parties contend Congress abrogated Eleventh Amendment immunity by enacting § 1983. *See* doc. 9 at 10; doc. 26 at 10-12. However, while courts ordinarily treat claims against a state officer in his official capacity as a claim against the state entity, *see Harden v. Adams*, 760 F.3d 1158, 1163 (11th Cir. 1985), the "Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief." *Lassiter v. Ala. A & M Univ.*, 3 F.3d 1482, 1485 (11th Cir. 1993), *reh'g granted*, *vacated on other grounds*, 19 F.3d 1370 (11th Cir. 1994). Thus, the claims against Defendants in their official capacity survive to the extent Plaintiff seeks prospective relief.

   *(i) Dr. Hugine and the Trustees in Their Official Capacity*

   Plaintiff seeks back pay, monetary damages, and reinstatement. Doc. 1 at ¶ 48. The Eleventh Amendment bars monetary awards against individuals in their

official capacity, but it does not bar prospective injunctive relief.   *See generally*

*Ex parte Young*, 209 U.S. 123 (1908); *see also Fla. Ass'n of Rehab. v. Fla. Dep't*

*of Health*, 225 F.3d 1208, 1219 (11th Cir. 2000); *Fedorov v. Bd. of Regents for the*

*Univ. of Ga.*, 194 F. Supp. 2d 1378, 1386 (S.D. Ga. 2002).   Courts typically apply

the *Ex parte Young* doctrine to address ongoing harms.   *See Fla. Ass'n of Rehab.*,

225 F.3d at 1219.

Here, the parties dispute the extent to which Plaintiff's requested relief is

prospective.   As Defendant Trustees note, Plaintiff seeks a remedy for past

wrongs.   Thus, as in *Fedorov*, Defendants urge the court to hold that a request for

"an injunction reinstating [plaintiff] . . . does not qualify as prospective relief."   *Id.*

at 1387.   Defendants assert that "[t]he term, 'prospective relief,' refers to the

ongoing or future threat of *harm*, not relief."   *Id.* (emphasis in original).

Defendants argue that, since Plaintiff is no longer employed, the alleged harm no

longer threatens her.

Conversely, Plaintiff asserts that reinstatement is prospective relief and,

therefore, appropriate under § 1983.   The Eleventh Circuit agrees and has held that

reinstatement is prospective injunctive relief and, as such, suits for reinstatement

are not barred by the Eleventh Amendment.   *See, e.g.*, *Cross v. State of Ala., State*

*Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir.

1995); *Lassiter*, 3 F.3d at 1485; *see also LaFleur v. Wallace State Cmty. Coll.*, 955 F. Supp. 1406,1423 (M.D. Ala. 1996).  In light of Eleventh Circuit precedent, Plaintiff's claims survive to the extent they seek reinstatement or prospective injunctive relief.  However, the court **DISMISSES** Plaintiff's claims for backpay and monetary damages under § 1983 against Dr. Hugine and the Trustees in their official capacity.

   *(ii) Dr. Hugine's Qualified Immunity*

   As to Plaintiff's equal protection claim against Dr. Hugine in his individual capacity, "qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights."  *Oliver v. Fiorini*, 586 F.3d 898, 904 (11th Cir. 2009) (citations omitted).  Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law," but applies only to officers acting within their official authority.  *See id.* at 904-05. Plaintiff does not contest that Dr. Hugine's involvement in her termination was solely in his official capacity.

   A court is "obliged to grant qualified immunity . . . unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the

officer's actions was 'clearly established' at the time of the incident." *Id.* (citation omitted).  Thus, to survive Dr. Hugine's motion to dismiss, Plaintiff must present a plausible claim that a constitutional violation occurred and that Dr. Hugine's conduct violated "clearly established" law.  *See Iqbal*, 129 S. Ct. at 1949.

Here, Plaintiff asserts that Dr. Hugine, along with others, terminated her because of her race, color, and gender.  Such discrimination, if it occurred, would amount to a constitutional violation, and the law prohibiting such discrimination by a state official is clearly established.  *See Lawson v. Curry*, 244 F. App'x 986, 988 (11th Cir. 2007) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991) ("It is beyond doubt that there is a federal equal protection right to be free from racial discrimination, that this right is clearly established, and that it extends into the employment context." (internal quotation marks omitted)).  Thus, because the court must assume Plaintiff's facts, as asserted, are true, Plaintiff's § 1983 claim against Dr. Hugine individually survives.  The court agrees with Defendant, however, that the Eleventh Circuit's recent determination that a heightened pleading standard no longer applies in § 1983 actions does not, by itself, make Plaintiff's claims sufficient.  *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).  Plaintiff's claim survives, for now, but in her amended complaint, she should demonstrate how Dr. Hugine's *conduct* relates to the

alleged constitutional violation.[7]  In particular, Plaintiff should show what exactly Dr. Hugine did besides being one of the individuals who signed her termination letter and, by extension, how this conduct allegedly violated her constitutional rights.

## D.  Plaintiff's Equal Protection Claim Under the Alabama Constitution

Plaintiff alleges violations of her equal protection rights under the Alabama Constitution[8] and seeks backpay, compensatory damages, and equitable relief. "The Supreme Court of Alabama has held that there is no authority that 'recognizes a private right of action for monetary damages based on violations of provisions of the Constitution of Alabama.'"  *Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1215 (M.D. Ala. 2000) (quoting *Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000); *see also  Ross v. State of Ala.*, 893 F. Supp. 1545, 1555 (M.D. Ala. 1995) (dismissing claims seeking monetary damages

---

[7] In light of the slim body of law that exists since the Eleventh Circuit's decision to affirmatively discard the heightened pleading standard for § 1983 claims, it is not clear whether a claim that satisfies Title VII's pleading standard also states a claim under § 1983 for one of the alleged actors in the Title VII claim.  Because Defendants concede that Plaintiff states a claim against the University under Title VII, the court determines that, despite Plaintiff's broad attribution of liability, Dr. Hugine's signature and role as head of the university make it plausible that he played a role in the conduct that allegedly constituted an equal protection violation.

[8] As Defendants note, the existence of such rights in the Alabama Constitution has not been conclusively determined.  Courts disagree whether or not such explicit rights exist. *Compare Ex parte Melof*, 735 So. 2d 1172 (Ala. 1999) *with Marsh v. Green*, 782 So. 2d 223, 236 n.3 (Ala. 2000); *see also Mack v. Ala. Dep't of Human Res.*, 201 F. Supp. 1196, 1208 n.6 (M.D. Ala. 2002).  The court will nonetheless assume, *arguendo*, that such a right is provided.

under the Alabama Constitution of 1901).  Consequently, her claims for monetary

damages must be dismissed.

Furthermore, to the extent Plaintiff requests injunctive or declaratory relief,

such relief is duplicative of Plaintiff's other claims.  Moreover, the court

concludes that Plaintiff's requests for injunctive and declaratory relief are properly

before the court via her action for writ of mandamus and declaratory judgment.

Those claims are addressed below.  Accordingly, the court **DISMISSES** Plaintiff's

claim for violation of equal protection rights under the Alabama Constitution of

1901 against Defendants in so far as it is subsumed by or merges with Plaintiff's

other claims.

## E.    State Law Claims

Plaintiff asserts several state law claims against Defendants.  In general, the

request for declaratory judgment, the breach of contract claim, and the request for

writ of mandamus all request similar relief.  As officers or arms of the State of

Alabama, Defendants assert immunity to suit under Article 1, Section 14 of the

Alabama Constitution.  Plaintiff concedes that "[a]s a general matter, the

Defendants are correct that Section 14 prohibits actions against the State of

Alabama and its employees."  Doc. 26 at 19.  However, Plaintiff asserts that her

claims "satisfy several of the recognized exceptions to Section 14 immunity."  *Id.*

17

at 20.  For the reasons stated below, Plaintiff is incorrect.

*(i)  Plaintiff Cannot Invoke Non-Mutual Collateral Estoppel*

Before addressing the substantive arguments of the parties regarding

Defendants' immunity under the Alabama Constitution, the court must briefly

address Plaintiff's assertion that this court cannot dismiss any of the state claims

because an Alabama state court denied a similar motion to dismiss in an almost

identical case.  Plaintiff asserts that principles of comity and collateral estoppel

necessitate this court's adherence to the state court's ruling.[9]  Collateral estoppel is

an equitable principal that prevents parties from re-litigating issues that were

litigated in the past.  *See generally Parkland Hosiery Co. v. Shore*, 439 U.S. 332

(1979).  The Supreme Court no longer requires mutuality of the parties to invoke

collateral estoppel, *id.*, but the Alabama Supreme Court requires some degree of

privity.  *See Ex parte Flexible Products Co.*, 915 So. 2d 34, 48 (Ala. 2005).

Collateral estoppel that does not involve mutuality of parties is referred to as non-

mutual or offensive collateral estoppel.  "[T]he Supreme Court held that non-

---

[9] Plaintiff directs the court's attention to a case based upon substantially the same set of facts brought by other white employees of the University.  *See Cross et al. v. Ala. Agric. & Mech. Univ.*, CV-10-272 JPS (Ala. Civ. Cir. 2010).  Doc. 26-1.  Plaintiff includes with her brief three exhibits from that state court case.  Defendants correctly note the impropriety of such exhibits as outside the pleadings and barred under FED. R. CIV. P. 12(d).  The court could only consider such exhibits were it to convert Defendants' motions to dismiss into motions for summary judgment. The court declines to do so, and, therefore, strikes the attached exhibits.

mutual offensive collateral estoppel may not be invoked against the government."
*Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558,
1578 (11th Cir. 1985) (citing *U.S. v. Mendoza*, 464 U.S. 154 (1984)).  The
Eleventh Circuit extended the Supreme Court's rationale to state governments as
well.  *Id.*  Thus, the invocation of non-mutual collateral estoppel against
Defendants is inappropriate.

Moreover, the referenced state court case does not involve Plaintiff and, as
Defendants note, is not yet final.  Additionally, Defendants indicate that the state
court judge offered no reasoning to support his denial and, instead, issued a one
sentence order.  Thus, this court refuses to follow that court based solely upon
Plaintiff's conjecture as to the reasons behind the state court's determination.  *Cf.*
*In re Emp't Discrimination Litig. Against Ala.*, 453 F. Supp. 2d 1323, 1330 (M.D.
Ala. 2001) (discussing the inapplicability of non-mutual collateral estoppel against
the state but borrowing from the rationale of the prior court's factual findings,
credibility assessments, and comments on the evidence).  The court declines to
invoke offensive non-mutual collateral estoppel.[10]  The court considers
Defendants' immunity arguments below.

--------

[10]In addition, Plaintiff rightly concedes that the pleading requirements in federal court
differ from those in Alabama state courts, (doc. 26 at 30), so the state court's decision not to
dismiss similarly-plead claims has no bearing on the decision here.

*(ii) Defendants May Invoke Section 14 Immunity*

Defendants assert that dismissal of Plaintiff's state law claims is appropriate

pursuant to Section 14, which provides: "That the State of Alabama shall never be

made a defendant in any court of law or equity."  ALA. CONST. 1901.  "The wall of

immunity erected by § 14 is nearly impregnable," *Patterson v. Gladwyn Corp.*,

835 So. 2d 137, 142 (Ala. 2002), and may not be waived, *Larkins v. Dep't of

Mental Health & Mental Retardation*, 806 So. 2d 358, 363 (Ala. 2001).  "This

means not only that the state itself may not be sued, but that this cannot be

indirectly accomplished by suing its officers or agents in their official capacity,

when a result favorable to plaintiff would be directly to *affect the financial status

of the state treasury*."  *Ala. Agric. & Mech. Univ. v. Jones*, 895 So. 2d 867, 872

(Ala. 2004) (emphasis in original) (internal quotations and citations omitted).

"Alabama A&M University is an instrumentality of the State of Alabama

and, thus, is absolutely immune from suit under § 14."[11]  *Id.* at 873 (quoting

*Matthews*, 787 So. 2d at 696).  The state law claims against the University are

therefore DISMISSED.[12]  *See Craft v. Craft*, 727 So. 2d 55, 58 (Ala. 1999); *Rigby*

---

[11]Plaintiff failed to indicate any purportedly "recognized exceptions" that apply to the
University.

[12]The Trustees, as members of the Board, are distinct from the Board itself.  The court's
understanding is that the Board, as the body corporate, is, for purposes of immunity, the same as
the University itself.  *See supra* note 2.  However, members of the Board, *i.e.* the Trustees, are

*v. Auburn Univ.*, 448 So. 2d 345, 347 (Ala. 1984).

Plaintiff's claims against individual officers require more analysis.

Generally, "actions against officers, trustees, and employees of state universities in

their official capacities are likewise barred by § 14" because such claims are

considered "against the State." *Jones*, 895 So. 2d at 873; *Rigby*, 448 So. 2d at 347.

The court must consider the relief requested in order to determine whether the

plaintiff's claims are barred.  *Stark v. Troy State Univ.*, 514 So. 2d 46, 50 (Ala.

1987).  Where an "action is essentially an action for damages, including back pay,

for breach of contract, a result favorable to [Plaintiff] would directly affect a

contract or property right of the state," and it is thus considered "against the

State."  *See Vaughan v. Sibley*, 709 So. 2d 482, 485 (Ala. Civ. App. 1997).

However, state officials are not immune from certain suits.  *See id.*  In *Jones*, the

Alabama Supreme Court explained that:

> [It] has recognized several species of action that are not 'against the State'
> for § 14 purposes.  Examples of these include: (1) Actions brought to
> compel state officials to perform their legal duties; (2) Actions brought to
> enjoin State officials from enforcing an unconstitutional law; (3) Actions to
> compel State officials to perform ministerial acts; (4) Actions brought under
> the Declaratory Judgments Act, seeking construction of a statute and how it
> should be applied in a given situation.

---

individually named and sued in their official capacity.  As such, under Alabama law, they are
state officers and are entitled to immunity as officials, but not as an instrumentality of the state.

895 So. 2d at 873 (internal citations and quotation marks omitted).

Plaintiff contends that each of her state law claims fits within an exception to § 14 immunity.  She asserts that the (1) declaratory judgment action seeks interpretation of a state statute or comparable rule or regulation; (2) breach of contract action seeks liquidated damages and, therefore, that the action would require officials to perform ministerial tasks; and (3) writ of mandamus would require state officials to perform their legal duties.  *See* doc. 26 at 20-25.  The court disagrees with Plaintiff's first two assertions, but agrees that a writ of mandamus may be a proper form of relief, even against otherwise immune state officials.

**(a) Declaratory Judgment**

Plaintiff contends that because she asserts her claim under the University's rules, her action is for a particular interpretation of state statute.  Plaintiff, however, has not presented the court with any case law equating a university handbook or hiring policy to a state statute.  Moreover, Plaintiff seeks monetary damages and backpay via her claim for declaratory judgment, and essentially seeks review of the decision to terminate.  Such relief is improper under a claim for declaratory judgment.  *See Ala. Leisure Enters., Inc. v. Macon Cnty. Racing Comm'n*, 460 So. 2d 195, 197 (Ala. Civ. App. 1984) ("[T]o use the procedure as in

22

the nature of appellate review of such an official action is improper."); *Klein v. State Bd. of Educ.*, 547 So. 2d 549, 553-54 (Ala. Civ. App. 1988) (holding that declaratory relief was not proper to review school action where the party's proper relief was in the mandamus relief she requested).  Accordingly, the court **DISMISSES** Plaintiff's claim for declaratory judgment.

### (b) Breach of Contract

Defendants assert that because claims for breach of contract against the State are barred in Alabama courts, the proper venue for such claims is Alabama's Board of Adjustment.  Plaintiff, however, asserts that such a jurisdictional strip is improper.  Doc. 26 at 27.  To the extent Defendants actually assert that the Board of Adjustment strips this court's jurisdiction, Defendants are mistaken.  The court understands Defendants' assertion, however, to maintain that it is § 14, in fact, that strips this court of the power to consider Plaintiff's breach of contract claim.  *See, e.g.*, *Jones*, 895 So. 2d at 874 ("Because of the sovereign immunity clause, the courts of this state are without jurisdiction to entertain a suit seeking damages, including back pay, for breach of contract against the state.") (internal quotation marks and citation omitted).

Indeed, the *Vaughan* court reiterated that "[b]ecause of the sovereign immunity clause, the courts of this state are without jurisdiction to entertain a suit

seeking damages, including back pay, for breach of contract against the state."
709 So. 2d at 486 (citation omitted).  The *Vaughan* court continued by explaining
that "[t]he Board of Adjustment has jurisdiction over claims against the state that
are not justiciable in the courts because of the state's constitutional immunity from
being made a defendant. . . . The Board of Adjustment has exclusive jurisdiction
over a contract claim against a state university."  *Id.* (internal citations omitted)

Likewise, the Board of Adjustment appears to have the exclusive
jurisdiction over Plaintiff's claims for breach of contract because § 14 immunity
prevents this court from considering Plaintiff's claims for backpay.[13]  The State
Board of Adjustment exists precisely because courts cannot consider a breach of
contract claim for back pay, but the state legislature wanted to afford individuals
with a means of addressing their complaints.  *See id.* at 873-76 (collecting cases to
demonstrate that a breach of contract action against the state for retrospective
relief, including back pay, in unavailable).  Accordingly, the court DISMISSES
Plaintiff's breach of contract claim.

---

[13] To the extent that Plaintiff asserts that her claims for backpay are claims for liquidated damages, (doc. 26 at 23), such an argument is not compelling.  Any contract claim is a claim for liquidated damages if the court accepts Plaintiff's arguments, because any contract claim for backpay is based on an ascertainable sum from an identifiable document.  Because of the discretion the University retains in hiring and firing, *see Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000), Plaintiff's claim for backpay is not "certain" or "fixed."  Plaintiff's liquidated damages arguments are addressed further below.  *See infra* III.E.(ii)(c).

### (c) Writ of Mandamus[14]

Defendants claim that Plaintiff can only use mandamus relief to compel a state officer to perform a ministerial task and that Plaintiff is seeking instead to review a state action.  Doc. 9 at 30-31.  Plaintiff, however, asserts that her claim for mandamus seeks nothing more than the performance of a ministerial task, namely the adherence of school officials to the Handbook.  Doc. 26 at 23-24.

Alabama courts have held that "where discretion of a state official is exhausted and that which remains to be done is a ministerial act, mandamus will lie to require the act."  *Taylor v. Troy State Univ.*, 437 So. 2d 472, 474 (Ala. 1983).  In *Taylor*, the plaintiff requested the court to order the defendants to offer the plaintiff his contract or show cause for his termination.  *Id.* at 475.  The plaintiff sought no backpay or any other monetary damages.  *Id.*  The court concluded that dismissal was improper because, if the plaintiff proved every allegation in his complaint, then the university had a policy that required them to explain the termination.  *Id.* at 476.  Thus, the court found that the relief the plaintiff sought was ministerial in that the termination required an explanation

---

[14] Plaintiff's complaint requests a writ of certiorari as an alternative to a writ of mandamus. Plaintiff does not address this claim in her responsive brief.  Doc. 26.  In any event, Plaintiff cannot secure review of the decision of a state actor in this court via writ of certiorari. Such a procedure would violate the Eleventh Amendment and § 14 of the Alabama Constitution.

under the language of the policy.  *See id.*

Likewise, a board "does not have to follow any particular evaluation policy. However, once such a policy is adopted by the board, the board is bound to follow it." *Vaughan*, 709 So. 2d at 485.  As the court explained, "insofar as the requested relief consists of ordering the defendants to follow the [school policy in question] in the future . . . § 14 does not bar his action." *Id.*  Indeed, along those lines, in *Stark*, although the court dismissed the university as absolutely immune, it considered the plaintiff's claims against the individual officers named in the complaint:

> [I]f the individual defendants have not acted toward the plaintiff in accordance with the rules and regulations set by the university, their acts are arbitrary and actions seeking to compel them to perform their legal duties will not be barred by the sovereign immunity clause of the Alabama Constitution of 1901; however, the action for compensatory damages cannot be maintained.

514 So. 2d at 50; *but see Jones*, 895 So. 2d at 881-82 (holding that a claim for backpay based on an employment contract over which the school maintained discretion does not constitute liquidated damages and, therefore, cannot be compelled via mandamus relief).

Here, Plaintiff asks the court to compel more than a ministerial task.  She asserts that because her backpay is easily calculated based on a prior employment

contract, it constitutes liquidated damages, the payment of which is ministerial. *Stark*, 514 So. 2d at 51; *Jones*, 895 So. 2d at 879-81.  However, no such employment contract currently exists.  Moreover, Plaintiff has not performed on her contract, as she has not actually worked for the period covering the time for which she now seeks back payment.  Courts have compelled liquidated damages payments only for completed contracts where the officials no longer had discretion.  *See Jones*, 895 So. 2d at 879-81 (collecting cases).  In other words, Plaintiff cannot compel payment on a contract that was not performed and does not currently exist.  Even if she can show an improper termination, Plaintiff has not shown and cannot show that Defendants had accepted a contract for her employment or that they lacked the discretionary authority to fire her.  Thus, the court cannot compel backpay.

Based on *Vaughan*, however, Plaintiff can maintain an action to compel the Trustees and Dr. Hugine to follow school procedures, but only to the extent such relief is prospective.  The court cannot provide Plaintiff an order rescinding her termination, nor can it award monetary damages in the form of compensatory relief or backpay.  At best, then, Plaintiff can secure a writ of mandamus ordering reinstatement and compelling Alabama A&M officials to abide by the school's procedures and policies.

27

*(iv) State Law Claims Against Dr. Hugine in Individual Capacity*

Plaintiff fails to assert any claims that survive against Dr. Hugine individually. Alabama law is clear that, where a university official's actions are taken in his official capacity, he is not liable individually.  *See Jones* 895 So. 2d at 876; *see also Milton v. Epsey*, 356 So. 2d 1201, 1202 (Ala. 1978).  However, the Alabama Supreme court laid out two exceptions in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  After outlining when a state official shall be immune, including when "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as . . . hiring, firing, transferring, assigning, or supervising personnel,"  the *Cranman* court then identified the exceptions: (1) when the Constitution or laws of the United States or Alabama require otherwise or (2) when the state official "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of law."  *Id.*  Alabama courts have previously allowed claims against university officials in their official capacity where the plaintiff asserts fraud or bad faith.  *See, e.g.*, *Rigby*, 448 So. 2d at 347 (allowing fraud claim against university president and members of the board of trustees in their individual capacities to survive motion to dismiss).

Here, Plaintiff has not indicated that Dr. Hugine took any action beyond

28

signing her letter of termination.  It is apparent from the complaint that all of the actions that Plaintiff might attribute to Dr. Hugine occurred in his official capacity as President, and, accordingly, he is immune from liability for state law claims. To try to get around this fact, Plaintiff asserts that, because Dr. Hugine purportedly failed to obey the procedures and policies, he acted beyond his authority and with bad faith.  Doc. 26 at 26-27.  This argument misses the mark for several reasons. First, Plaintiff asserts the bad faith in her responsive briefing and not in her Complaint.  As Plaintiff may know, legal memoranda and briefs are not evidence, *see, e.g.*, *Watkins v. Napolitano*, 2010 WL 4263186, at *7 n.7 (11th Cir. Oct. 27, 2010) ("Watkins's unsworn statements in his briefs are not admissible evidence."); *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328,1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence."); *Guillen v. Holder*, 2010 WL 3926863 *1 (5th Cir. Oct. 1, 2010) ("[C]ounsel's statements in the motion and subsequent briefs are not evidence."), nor do they plead allegations that amend a complaint.  Second, Plaintiff fails to make any factual assertions specific to Dr. Hugine.  Such a bare contention is problematic and insufficient because it would seemingly transform any breach of contract claim into a bad faith claim as well.  *Cranman* specifically notes that decisions in hiring and firing are areas of discretion and, therefore, areas where a state-agent is immune.  792 So. 2d at 405.  Plaintiff argues that Dr.

29

Hugine failed to abide by the rules in the Handbook, which binds the University contractually and takes on the force of law.  Even assuming Dr. Hugine made no effort to follow the policies and improperly terminated Plaintiff, the appropriate action is a breach of contract claim, which, of course, involves the allegation that the breaching party failed to abide by the terms of some binding rule, policy, or agreement.  If the court accepted Plaintiff's assertion that a failure to follow the Handbook was also sufficient to indicate maliciousness or bad faith and brought an individual within the *Cranman* exceptions, then the exceptions have swallowed the rule.  The *Cranman* court specifically delineated that hiring and firing are within the discretionary acts that provide immunity to officials in their personal capacity.  *Id.*

Moreover, Plaintiff fails to assert that Dr. Hugine's actions were motivated by Plaintiff's color, race, or sex.  Even in her responsive pleadings, she bases Dr. Hugine's individual liability on his alleged failure to abide by school policies. Plaintiff's blanket claims that Defendants improperly terminated her based on her race or sex were not specific to Dr. Hugine.  Dr. Hugine is immune individually for actions taken in his official capacity, and Plaintiff's brief reference to Dr. Hugine in her Complaint fails to assert the bad faith or malicious intent necessary to pierce that immunity.  Consequently, Plaintiff's state law claims against Dr.

Hugine in his individual capacity are barred by § 14 and are **DISMISSED**.

## CONCLUSION

Consistent with this memorandum opinion, the court DISMISSES the following claims:

(1) Plaintiff's Title VII claims against Dr. Hugine and the Trustees;

(2) Plaintiff's Section 1981 and 1983 claims against the University;

(3) Plaintiff's Section 1981 and 1983 claims against Dr. Hugine in his official capacity and against the Trustees in their official capacity, to the extent she seeks retrospective damages, monetary damages, or back pay;

(4) Plaintiff's claim for violation of equal protection under the Alabama Constitution of 1901;

(5) Plaintiff's state law claims against the University;

(6) Plaintiff's state law claim for declaratory judgment;

(7) Plaintiff's breach of contract claim; and

(8) Plaintiff's state law claims against Dr. Hugine in his individual capacity.

The court recognizes the lack of detail in Plaintiff's complaint. As a result, the court has dismissed the claims that she cannot prove and, because of Plaintiff's *pro se* status at the time of her filing, affords her the opportunity to amend her pleading in accordance with this Memorandum Opinion. Plaintiff may not add

additional claims.  She should note the claims and requests for relief that the court

has dismissed and amend her complaint accordingly to add detail to those that

remain.  Notably, Plaintiff may only seek prospective relief with respect to

Defendants in their official capacity under § 1983 and on the state law claims.

DONE this the 20th day of December, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE